UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HOSPITALITY STAFFING SOLUTIONS, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>NEONI R. REYES,<br><br>    Defendant. | Civil Action No. 10-1401 (CKK) |

**MEMORANDUM OPINION**
(September 9, 2010)

This action was filed on August 19, 2010, by Plaintiff Hospitality Staffing Solutions, LLC ("Plaintiff" or "HSS") against Defendant Neoni R. Reyes ("Defendant" or "Reyes"). Plaintiff alleges that Reyes, a former employee, has violated the terms of a restrictive covenant and a confidentiality agreement by competing against HSS, disseminating confidential information, and luring HSS employees to a competing company. Plaintiff seeks compensatory damages as well as injunctive relief to enjoin Reyes from continuing and future violations. Along with the Complaint, Plaintiff filed a [3] Motion for Preliminary and Permanent Injunctive Relief.[1] After proof of service was filed, the Court made several efforts to contact Reyes. On September 2, 2010, the Court held a conference call on the record with Reyes and counsel for Plaintiff in which the Court gave Reyes until close of business on Tuesday, September 7, 2010, to file a response to Plaintiff's Motion for Preliminary Injunction. Reyes failed to file a response by that deadline. Therefore, the Court considers the merits of Plaintiff's Motion for Preliminary

---

[1] Although styled as a motion for preliminary and permanent injunctive relief, the Court at this time only considers Plaintiff's motion for preliminary relief.

Injunction without the benefit of an opposition. The Court also considers Plaintiff's [8] Motion to Expedite Discovery without the benefit of an opposition. For the reasons explained below, the Court shall GRANT-IN-PART and DENY-IN-PART Plaintiff's Motion for a Preliminary Injunction and GRANT Plaintiff's [8] Motion to Expedite Discovery.

## I. BACKGROUND

Plaintiff Hospitality Staffing Solutions, LLC, is a hospitality staffing company, providing hotels and resorts with reliable workforces throughout the country, including in Washington, D.C. *See* Decl. of Mauricio Ramirez ("Ramirez Decl.") ¶ 1. The staffing services provided by HSS include full-time housekeeping, janitorial, stewarding, laundry, food and beverage, and grounds maintenance employees. *Id.* Defendant Neoni R. Reyes was an Area Supervisor for HSS. *Id.* ¶ 2. During his employment with HSS, Reyes played a vital role in the recruitment, placement, and management of staffing for the hospitality, hotel, and janitorial industries throughout the United States. *Id.*

On August 7, 2006, Reyes executed a Restrictive Covenant and a Confidentiality Agreement. *Id.* ¶¶ 3-4; *see id.*, Exs. 1-2. The Restrictive Covenant provides that for a period of one year after the termination of employment, Reyes shall not "actively encourage or induce the voluntary termination of, or recruit any person(s) then employed by or associated with HSS as an employee or independent contractor for the purpose of engaging in" the business of recruitment, placement, and management of staffing for the hospitality, hotel, and janitorial industries throughout the United States. *Id.* ¶ 5 & Ex. 1 (Restrictive Covenant) at 1, § 1.3. The Restrictive Covenant also restricts Reyes from directly or indirectly soliciting, contacting, or calling upon any existing or prospective clients of HSS with whom Reyes had material contact during his

2

employment with HSS for business purposes.  *Id.* ¶ 5.

The Restrictive Covenant also provides that for a period of two years following termination of employment, Reyes "shall not disclose or make available, directly or indirectly, any of HSS' information or material . . . that may be reasonably understood . . . to be confidential and/or proprietary to HSS or to third parties to which HSS owes a duty of nondisclosure . . . to any person, concern or entity except in the proper performance of [his] duties and responsibilities as an Employee of HSS or with the prior written consent of HSS."  Ramirez Decl., Ex. 1 (Restrictive Covenant), § 1.5.  The Confidentiality Agreement contains similar provisions, which provides that Reyes must, upon termination, "surrender and deliver" to HSS all HSS property, including proprietary information.  *Id.* ¶ 7.  During the course of his employment with HSS, Reyes had access to HSS's confidential and proprietary information, including but not limited to HSS's trade secrets, accounting information, pricing information, billing code information, and data information regarding the rates paid to HSS's employees and/or contractors, and HSS's contacts at its client companies.  *Id.* ¶ 8.  This information is valuable, confidential, and proprietary to HSS, and is generally not known in the public domain.  *Id.*  HSS considers and treats such information as confidential and proprietary trade secrets.  *Id.*  During Reyes's employment with HSS, HSS had a contract to provide hospitality staffing to the Dupont Hotel at 1500 New Hampshire Avenue, N.W., Washington, D.C. 20036.  *Id.* ¶ 9.

Reyes's employment with HSS was terminated on or about April 16, 2010 because Reyes could not provide documentation to verify his continued right to employment in the United States.  Ramirez Decl. ¶ 10.  Soon thereafter, Reyes became employed with Capitol Staffing and began to actively recruit current and former HSS employees for the purpose of competing with

3

HSS. Both HSS and Capitol Staffing directly compete for services in the same market. *Id.* On or about August 9, 2010, Dupont Hotel gave HSS notice of its intent to terminate its contract with HSS. *Id.* ¶ 11. Dupont replaced HSS with hospitality staffing provided by Reyes through Capitol Staffing. *Id.*

## II. PROCEDURAL HISTORY

Plaintiff filed the Complaint in this action on August 19, 2010. Plaintiff's [3] Motion for Preliminary and Permanent Injunctive Relief was filed along with the Complaint. On August 27, 2010, Plaintiff filed an [5] Affidavit of Service indicating that Reyes was served on August 24, 2010, at 5:25 PM. According to the proof of service filed on the Court's docket, service was made by leaving a copy of the summons, the Complaint, and the Motion for Preliminary and Permanent Injunctive Relief with Reyes's sister, Ms. Maldanado, who stated that she resides with Reyes, at their place of residence at 10136 Allentown Road, Fort Washington, Maryland, 20744.

Shortly after Plaintiff filed this action, the Court contacted counsel for Plaintiff to determine whether Reyes had been served with the Complaint and the motion for a preliminary injunction. After Plaintiff's counsel indicated that Reyes had been served, the Court instructed Plaintiff's counsel to contact Reyes (or his attorney, if Reyes was represented by counsel) in an attempt to schedule a conference call with the Court regarding a schedule for adjudicating the motion for preliminary injunction. Plaintiff's counsel later informed the Court that he had been unsuccessful in reaching Reyes but that he had left Reyes a voicemail message on Reyes's cell phone. Plaintiff's counsel provided the Court with the telephone number he used to contact Reyes. On Thursday, August 26, 2010, the Court left a message for Reyes on his voicemail asking him to call chambers. On Friday, August 27, 2010, the Court called Mr. Reyes a second

4

time and was able to speak to an individual who identified himself as Reyes. The Court informed Reyes of the lawsuit and the need to set up a conference call regarding Plaintiff's motion for preliminary injunction and asked when he was available. The man on the phone told the Court that he would have his attorney contact the Court on either Monday, August 30, or Tuesday, August 31. The Court told him that he needed to call that day (Friday) or at the latest on Monday. He hung up shortly thereafter without responding. He did not provide the name of his attorney. Following that phone call, the Court issued an [6] Order to Respond directing Reyes or his attorney to contact chambers by no later than 5:00 PM on Monday, August 30, 2010, for the purpose of having a conference call to set up a schedule for adjudicating Plaintiff's motion for preliminary injunction.

Reyes did not respond to the Court's [6] Order to Respond by the deadline set forth in that order. After business hours on August 30, 2010, the Court received a voicemail from D.Q.,[2] an individual residing at the address listed for Reyes on the Complaint. D.Q. indicated that he had received a package at his house for Mr. Neoni Reyes. On August 31, 2010, the Court returned D.Q.'s call. D.Q. told the Court on the phone that Reyes does not live at that address but speculated that he had previously lived there because he often receives mail for Reyes. D.Q. also indicated that he called Reyes using the telephone number on the FedEx delivery slip to inform him that he had a package from the Court. According to D.Q., Reyes told him that he did not want the package, that he was not going to pick it up, and that D.Q. should just throw it away.

On August 31, 2010, the Court issued an [7] Order to Respond to Motion for Preliminary Injunction. The Court noted in the order that pursuant to LCvR 65.1(c), a party's opposition to a

---

[2] For privacy reasons, the Court has identified this individual only by his initials.

motion for preliminary injunction is due within 7 days after service of the motion, and therefore Reyes's opposition was due on August 31, 2010. The Court noted that it had no obligation to extend this deadline nor had it received any request to do so. However, the Court ordered that Reyes could file a response to Plaintiff's motion for preliminary injunction by no later than 5:00 PM on Thursday, September 2, 2010.

On September 2, 2010, Plaintiff filed a [8] Motion to Expedite Discovery seeking to compel Defendant to respond to its First Set of Interrogatories and First Request for Production of Documents within five days of the Court's order on its motion.

Late in the afternoon on September 2, 2010, Reyes telephoned the Court. The Court arranged to get Plaintiff's counsel on the phone and conducted a teleconference with both parties on the record. Reyes indicated that he had received the Court's [7] Order to Respond to Motion for Preliminary Injunction. However, Reyes claimed that he had just returned to the United States the night before from a two-week trip to Honduras and was not aware of this lawsuit prior to his return. Reyes also indicated that his address is 13433 Greenacres Drive, Woodbridge, VA 22191, and he suggested that Ms. Maldonado is not his sister. The Court agreed to extend the deadline for Reyes to file a response to Plaintiff's Motion for Preliminary Injunction to close of business on Tuesday, September 7, 2010 and issued a written [9] Order to that effect. The Court also ordered that along with any opposition, Reyes shall file under seal a full copy of his passport indicating that he was out of the country. The Court also ordered Reyes to respond to Plaintiff's [8] Motion to Expedite Discovery by that date.[3]

---

[3] The Court ordered Plaintiff to send by overnight mail a copy of its [8] Motion to Expedite to Reyes at his address in Woodbridge, VA. Plaintiff filed a [12] Certificate of Service indicating that it sent Reyes a copy of the Motion to Expedite Discovery, the Complaint, the

Reyes did not file a response by Tuesday, September 7, 2010, as ordered by the Court. As of the date of this Memorandum Opinion, Reyes has not filed any papers in this action.

### III. LEGAL STANDARD

Plaintiff has filed a motion for a preliminary injunction. "The standard for issuance of the 'extraordinary and drastic remedy' of a temporary restraining order or a preliminary injunction is very high, and by now very well established." *RCM Techs., Inc. v. Beacon Hill Staffing Grp., LLC*, 502 F. Supp. 2d 70, 72-73 (D.D.C. 2007) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). The moving party must show: (1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunctive relief were not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction. *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006); *Hall v. Daschle*, 599 F. Supp. 2d 1, 6 n.2 (D.D.C. 2009) ("[t]he same standard applies to both temporary restraining orders and to preliminary injunctions"). The moving party bears the burden of persuasion and must demonstrate, "by a clear showing," that the requested relief is warranted. *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297. "The four factors have typically been evaluated on a 'sliding scale.'" *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1291 (D.C. Cir. 2009). Under this sliding scale, "[i]f the movant makes an unusually strong showing on one of the factors, then it does not necessarily have to make as strong a showing on another factor." *Id.* at 1291-92.

"It is particularly important for the [movant] to demonstrate a substantial likelihood of

---

Motion for Preliminary and Permanent Injunctive Relief, Memorandum of Law in Support, and Proposed Order.

success on the merits." *Barton v. District of Columbia,* 131 F. Supp. 2d 236, 242 (D.D.C. 2001) (citing *Benten v. Kessler*, 505 U.S. 1084, 1085 (1992)). If the movant fails to do so, inquiry into the remaining factors is unnecessary, for the injunctive relief must be denied on that ground alone. *See Transohio Sav. Bank v. Dir., Off. of Thrift Supervision*, 967 F.2d 598, 614 (D.C. Cir. 1992) (affirming denial of preliminary injunction where the district court properly concluded that the plaintiff had "no likelihood of success on the merits"); *Katz v. Georgetown Univ.*, 246 F.3d 685, 688 (D.C. Cir. 2001) ("although we apply a four-factor test in weighing a request for a preliminary injunction, such relief never will be granted unless a claimant can demonstrate 'a fair ground for litigation'"); *Taylor v. Resolution Trust Corp.*, 56 F.3d 1497, 1507 (D.C. Cir. 1995) ("Given the inadequacy of [plaintiff]'s prospects for success on the merits, there may be no showing of irreparable injury that would entitle him to injunctive relief."), *amended on other grounds on reh'g*, 66 F.3d 1226 (D.C. Cir. 1995). In addition, the movant must establish that irreparable injury must be likely, "not just a possibility." *Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 375 (2008).

## IV. DISCUSSION

Plaintiff seeks preliminary injunctive relief, as well as expedited discovery in this action. The Court shall consider each of Plaintiff's requests.

### A. *Motion for Preliminary Injunction*

In its motion for preliminary injunctive relief, plaintiff seeks to enjoin Reyes from: (1) actively soliciting, contacting or calling upon any existing or prospective clients of HSS with whom Reyes had material contact; (2) actively encouraging or inducing the voluntary termination of, or recruitment of any person(s) employed by HSS as an employee or independent contractor;

and (3) disclosing and utilizing HSS's confidential and propriety information. The Court shall consider whether Plaintiff's request for relief satisfies the requirements for a preliminary injunction.

1. Substantial Likelihood of Success on the Merits

Plaintiff has asserted causes of action for breach of contract and tortious interference with existing and prospective business relationships. The factual averments in the declaration of Mauricio Ramirez, which the Court accepts as true in the absence of evidence to the contrary, appear to establish that Reyes has breached the Restrictive Covenant and the Confidentiality Agreement by soliciting HSS employees to compete against HSS. The contractual obligations at issue are (1) Reyes's agreement not to solicit HSS customers for a period of one year following termination, (2) Reyes's agreement not to solicit HSS employees for a period of one year following termination, and (3) Reyes's agreement not to disclose HSS's confidential and proprietary information for a period of two years following termination.[4] Plaintiff points out that courts in the District of Columbia have enforced restrictive covenants such as these when they are narrowly tailored to protect an employer's legitimate business interest. *See Deutsch v. Barsky*, 795 A.2d 669, 674-75 (D.C. 2002) (noting that courts in the District of Columbia have upheld covenants not to compete where the terms are reasonable and not more extensive than necessary for the protection of the business interest at stake); *see also Chaichimansour v. Pets*

---

[4] The Restrictive Covenant also contains an agreement by Reyes that he will not directly compete with HSS in the relevant market within 25 miles of HSS's principal address, which is in Georgia. *See* Ramirez Decl., Ex. 1 (Restrictive Covenant) § 1.1. Because HSS seeks an injunction against Reyes's conduct in the District of Columbia, that provision is not applicable here, and Plaintiff does not rely on this provision in seeking a preliminary injunction. The other agreements do not contain a geographic limitation.

*Are People Too, No. 2, Inc.*, 485 S.E.2d 248, 249 (Ga. Ct. App. 1997) ("Covenants not to compete in employment contracts are enforceable if they are reasonable in terms of duration, territorial coverage, and the scope of the activity precluded, considering the legitimate business interests the employer seeks to protect and the effect on the employee.")[5] The restrictions contained in the Restrictive Covenant and the Confidentiality Agreement are limited in duration and appear to be limited to protecting HSS's business interests in the relevant market by preventing Reyes from using HSS information to attract employees or customers to a competitor. *See Ellis v. James V. Hurson Assocs., Inc.*, 565 A.2d 615, 620 ("[T]he cases reveal widespread adherence to the view that prohibitions against the solicitation of customers known to the employee by virtue of his former employment are enforceable as reasonable restrictions protective legitimate business interests of the employer.") Accordingly, the Court finds that HSS has demonstrated a substantial likelihood of success on the merits of its breach of contract claim.

  2.   Irreparable Injury

Plaintiff argues that a preliminary injunction is necessary because it will suffer irreparable harm if Reyes is not enjoined from soliciting former HSS clients and employees and from using HSS's confidential information to compete against it. Plaintiff points to the fact that Reyes is competing for services in the same market as HSS with a competitor company, Capitol Staffing, and notes that Plaintiff has already lost its contract with the Dupont Hotel. Plaintiff also points to the fact that Reyes has used HSS's confidential information, including prospective client

---

[5] Both the Restrictive Covenant and the Confidentiality Agreement provide that they shall be construed and interpreted in accordance with the law of the State of Georgia. *See* Ramirez Decl., Ex. 1 (Restrictive Covenant) § 2.9; *id.*, Ex. 2 (Confidentiality Agreement) § 2.3. HSS has not argued that Georgia law should apply.

information and billing rates, to compete against it and will continue to do so in the absence of injunctive relief. The Court shall address these harms separately.

a. Economic harm from Reyes's solicitation of employees and clients.

To establish irreparable harm, a plaintiff must show that its injury is "great, actual, and imminent." *Hi-Tech Pharmacal Co. v. U.S. Food & Drug Admin.*, 587 F. Supp. 2d 1, 11 (D.D.C. 2008). Plaintiff must also "demonstrate irreparable injury is *likely* in the absence of an injunction." *Winter*, 129 S. Ct. at 375. Plaintiff contends that there is no adequate remedy at law for Reyes's breaches of the Restrictive Covenant and the Confidentiality Agreement. However, Plaintiff has cited no legal authorities in support of this assertion. The law of this Circuit is clear that economic loss, in and of itself, does not constitute irreparable harm. *Wis. Gas Co. v. Fed. Energy Regulatory Comm'n*, 758, F.2d 669, 674 (D.C. Cir. 1985). "Recoverable monetary loss may constitute irreparable harm only where the loss threatens the very existence of the movant's business." *Id.*; *see also Carabillo v. ULLICO Inc. Pension Plan and Trust*, 355 F. Supp. 2d 49, 55 (D.D.C. 2004) ("Courts have also recognized that economic loss may constitute 'irreparable harm' where the defendant would become insolvent or otherwise judgment-proof prior to the conclusion of litigation, thus making the plaintiff's alleged damages unrecoverable."), *aff'd*, 198 F. App'x 1 (D.C. Cir. 2006). A number of courts in this Circuit have declined to issue preliminary injunctions to enforce restrictive covenants against former employees where the employer has failed to show that the economic losses from the breach are either incalculable or so substantial as to threaten the employer's ability to stay in business. *See, e.g.*, *Smith, Bucklin & Assocs., Inc. v. Sonntag*, 83 F.3d 476, 481 (D.C. Cir. 1996) (finding that employer had failed to establish irreparable harm based on lost customer account); *Ajilon Prof'l Staffing, PLC v.*

*Kubicki*, 503 F. Supp. 2d 358, 362 (D.D.C. 2007) (finding no irreparable harm from former employees' use of client lists because damages were limited to lost revenues, which were ascertainable, and employer failed to show anything more than a simple economic loss); *L.G. Balfour Co. v. McGinnis*, 759 F. Supp. 840, 846 (D.D.C. 1991) (denying injunction where employer failed to show that its injury to customer goodwill in the Washington, D.C. area was incalculable).

The only factual support that HSS has provided in support of its motion for preliminary injunction is the Ramirez declaration.[6] That declaration indicates that HSS has lost its contract with Dupont Hotel, apparently caused in part by Reyes's work with Capitol Staffing. However, Plaintiff has not explained why there is no adequate remedy at law for the loss of the Dupont Hotel contract. Presumably, HSS can place a dollar value on the loss of that contract and recover that amount as money damages. Although there is some competitive threat from Reyes and Capitol Staffing since they compete with HSS in the same market, Plaintiff has provided no information about its competitive presence in the District of Columbia to explain the extent to which it will be injured by further competition from Reyes. Accordingly, Plaintiff has not shown that its economic losses are incalculable. *Compare Morgan Stanley DW Inc. v. Rothe*, 150 F. Supp. 2d 67, 77 (D.D.C. 2001) (finding damages to be incalculable based on affidavits showing that defendant serviced hundreds of client accounts with no reliable way of determining which clients would be affected). Nor has Plaintiff provided any information to suggest that Reyes will

---

[6] Pursuant to Local Civil Rule 65.1(c), a party's application for a preliminary injunction "shall be supported by all affidavits on which the plaintiff intends to rely." LCvR 65.1(c). The practice in this jurisdiction is to decide preliminary injunction motions without live testimony where possible. *See* LCvR 65.1(d). Accordingly, the Court relies solely on the papers submitted in support of Plaintiff's motion.

be unable to pay a monetary judgment. Therefore, there is nothing in the record that indicates that the competitive harms suffered by HSS without a preliminary injunction are irreparable with respect to Reyes's further competition in the market. Without a likelihood of irreparable harm from Reyes's continued competition, Plaintiff is not entitled to preliminary injunctive relief on this basis.

2. Harm from disclosure of confidential and proprietary information.

The Ramirez declaration indicates that Reyes had access to HSS's confidential and proprietary information, and the circumstances of Reyes's competition suggest that Reyes has shared this information with competitors. HSS has alleged that "Reyes is using and disclosing confidential and proprietary information of HSS, including, but not limited to client information, prospective client information, pricing information, and billing rates." Compl. ¶ 15. This Court has recognized that the disclosure of confidential information can constitute an irreparable harm because such information, once disclosed, loses its confidential nature. *See Council on Am.-Islamic Relations v. Gaubatz*, 667 F. Supp. 2d 67, 76 (D.D.C. 2009); *see also Rothe*, 150 F. Supp. 2d at 77 (finding irreparable harm based on potential disclosure of confidential client information). If HSS's proprietary business information is disclosed to its competitors in the market, HSS may lose whatever competitive advantage it possessed over competitors, and that loss would be hard to quantify through money damages. Therefore, the Court finds that HSS is likely to be irreparably harmed by the disclosure of proprietary information absent a preliminary injunction.

3. Balance of the Equities

There is no evidence in the record to suggest that a preliminary injunction restraining

Reyes from disclosing HSS's confidential and proprietary information would substantially injure Reyes or any other third parties. Such an injunction would not restrict Reyes from continuing employment in the relevant market. By signing the Restrictive Covenant and Confidentiality Agreement, Reyes agreed not to disclose HSS's confidential and proprietary information to third parties. Furthermore, it appears that Reyes has consented to injunctive relief to enforce the provisions of the Restrictive Covenant. *See* Ramirez Decl., Ex. 1 (Restrictive Covenant) § 1.7 ("Employee acknowledges that the Restrictive Covenants set forth in this Section 1 are reasonably necessary in light of the competitive nature of HSS' Business. As Employee recognizes that a violation by Employee of any of the provisions of this Section 1 could cause irreparable injury to HSS and as there is no adequate remedy at law for such violation, HSS shall have the right . . . to enjoin Employee from violating or threatening to violate such provisions.")[7] Accordingly, the Court finds that the balance of the equities supports the issuance of a preliminary injunction with respect to the nondisclosure of HSS's proprietary and confidential information.

    4.    <u>Public Interest</u>

The Court finds that the public interest would be furthered by the issuance of a preliminary injunction. The preliminary injunction would enforce the parties' contractual agreement and ensure the confidentiality of business information, which is necessary for free and fair competition. Accordingly, this factor weighs in favor of issuing preliminary injunctive relief.

---

[7] A similar provision exists in the Confidentiality Agreement; however, that provision provides that Reyes consents to the issuance of injunctive relief only by either the Superior Court of Cobb County, Georgia, or the United States District Court for the Northern District of Georgia. *See* Ramirez Decl., Ex. 2 (Confidentiality Agreement) § 2.2.

5. Conclusion

Based on the analysis above, the Court finds that Plaintiff has satisfied the requirements for a preliminary injunction with respect to its third request for preliminary relief, that Reyes be enjoined from disclosing and utilizing HSS's confidential and propriety information. Therefore, the Court shall grant Plaintiff's motion for preliminary injunction with respect to this request for relief. Because Plaintiff has failed to show on the present record that it will be irreparably harmed without an injunction with respect to its first two requests for relief—to enjoin Reyes from soliciting existing or prospective HSS clients with whom Reyes had contact and from encouraging HSS employees to leave HSS—the Court shall deny Plaintiff's motion with respect to those requests.

B. *Motion to Expedite Discovery*

Due to the urgent nature of this matter, Plaintiff seeks to expedite discovery by requiring Reyes to respond to its First Set of Interrogatories and First Request for Production of Documents sooner than the deadline set forth in Federal Rules of Civil Procedure 33(b) and 34(b), which is 30 days. Plaintiff served a copy of its interrogatories and requests for production on Reyes by overnight delivery on September 2, 2010. *See* [12] Certificate of Service. Therefore, Reyes's normal deadline to respond would be October 5, 2010, factoring in the additional 3 days required by Rule 6(d). In its Order issued on September 2, the Court directed Reyes to file a response to Plaintiff's Motion to Expedite Discovery by no later than September 7, 2010. Reyes has failed to respond to the motion, and therefore the Court may treat it as conceded. *See* LCvR 7(b) ("If . . . a memorandum [opposing a motion] is not filed within the prescribed time, the Court may treat the motion as conceded."). The Court agrees that there is a

need for Plaintiff to obtain discovery in order to determine the nature and extent of Reyes's alleged breaches of the Restrictive Covenant and the Confidentiality Agreement, and the Court further agrees that it is appropriate to require Reyes to provide that discovery on an expedited basis given the continuing nature of the alleged violations. Therefore, the Court shall grant Plaintiff's Motion to Expedite Discovery and order that Reyes respond to Plaintiff's discovery requests within one week of the order.

## V. CONCLUSION

For the foregoing reasons, the Court shall GRANT-IN-PART and DENY-IN-PART Plaintiff's [3] Motion for Preliminary Injunctive Relief. The Court shall preliminarily enjoin Defendant from disclosing and utilizing HSS's confidential and proprietary information. The Court shall also GRANT Plaintiff's [8] Motion to Expedite Discovery. Defendant shall be ordered to respond to Plaintiff's outstanding discovery requests by September 16, 2010. An appropriate Order accompanies this Memorandum Opinion.

                                                                              */s/*
                                                                   COLLEEN KOLLAR-KOTELLY
                                                                   United States District Judge